UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

CURTIS TATE,

                Plaintiff,                Case No. 1:09-cv-307

v.                                        Honorable Janet T. Neff

CAROL HOWES et al.,

                Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Bonita Hoffner, Carmen D. Palmer, Tim Kipp, Anthony Stewart, Tokie R. Uwanaka, Alan M. Bonn and Mary Berghuis. The Court will serve Count Two of the complaint against Defendants Carol Howes and Dan Hawkins.

**Discussion**

I.        Factual allegations

Plaintiff Curtis Tate presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Earnest C. Brooks Correctional Facility (LRF). The series of actions of which he complains occurred while he was housed at LRF and while he was housed at both the Lakeland Correctional Facility (LCF) and the Michigan Reformatory (RMI). He sues the MDOC and following individual Defendants: LCF Warden Carol Howes, LCF Deputy Warden Bonita Hoffner, LCF Assistant Deputy Warden Dan Hawkins, RMI Warden Carmen D. Palmer, RMI Deputy Warden Tim Kipp, RMI Assistant Deputy Warden Anthony Stewart, RMI Resident Unit Manager Tokie R. Uwanaka, RMI Assistant Resident Unit Supervisor Alan M. Bonn and LRF Warden Mary Berghuis.

According to the allegations and attachments to the amended complaint, in January 2009, while Plaintiff was incarcerated at LCF, he experienced symptoms from two brain aneurysms. On January 14, 2009, he underwent a brain operation at Borgess Medical Center to repair the aneurysms. He was hospitalized for a total of 13 days. He was released on January 26, 2009. After his surgery, Plaintiff experienced certain physical and mental effects requiring medical accommodations including a barrier-free prison environment and rehabilitation services to improve balance, ambulation, dexterity and vision and speech skills. The Borgess surgeons also planned to perform a second brain surgery 90 days later to repair another arteriovenous malformation.

On January 26, 2009, Plaintiff was placed in the LCF Segregation Housing Unit, cell #2, where he was held through February 3, 2009. He alleges that the cell was unheated and that he was not provided with sufficient clothing or blankets to stay warm. Plaintiff contends that he

repeatedly advised Defendants Howes and Hoffner of the cold cell temperatures and they failed to address the issue. Plaintiff also alleges that the cold cell caused him severe pain and suffering and prolonged his recovery from the brain surgery.

On February 3, 2009, Petitioner was found guilty of three misconducts: threatening behavior, creating a disturbance and sexual misconduct. (Att. to Am. Compl., docket #6-4 at 13.) That same day, he was informed by Defendant Hawkins that he would be transferred from LCF, and Defendant Hoffner advised him of the transfer on February 4, 2009. On February 4, Plaintiff was transferred from LRF to RMI. A security classification review was conducted at RMI by Defendant Uwanaka, which was approved by Defendant Stewart on February 5, 2009. The attachments to the complaint indicate that Plaintiff retained a Level II security classification, but Plaintiff was being placed in Level IV in order to facilitate his need for medical accommodations such as a ground floor room and a lower level bunk. (Att. to Compl, docket #1-2 at 5.)

On February 26, 2009, Defendant Bonn issued a corrected security classification review report, which also was approved by Defendant Stewart. (Att. to Compl., docket #1-2 at 8.) That review again listed Plaintiff's true classification as Level II and his actual placement classification as Level IV on the basis of a lack of bed space at Level II. On March 4, 2009, Plaintiff was transferred from RMI to Level II at LRF.

In Count I of his complaint, Plaintiff alleges that the MDOC subjected him to cruel and unusual punishment by transferring him from LCF to RMI, in alleged disregard of his recent treatment at Borgess Medical Center and his anticipated need for additional surgery. Plaintiff alleges that, because LCF is closer to the medical center than RMI and because LCF is a barrier-free

facility, the MDOC Central Office should have refused to transfer him for at least 180 days after his surgery. He broadly alleges that the transfer impeded his recovery.

Plaintiff alleges in his second claim for relief that Defendants Howes and Hawkins violated his rights under the Eighth Amendment by subjecting him to nine winter days of imprisonment in a cell lacking heat. In Count III, Plaintiff contends that Defendants Hoffner and Hawkins violated his First Amendment rights by transferring him from LCF to RMI in retaliation for Plaintiff having filed grievances about abusive prison conditions. In his fourth claim for relief, Plaintiff alleges that RMI Defendants Palmer, Kipp, Stewart, Uwanaka and Bonn violated his First Amendment rights by continuing his retaliatory transfer, by moving him from RMI A-Ward to RMI Housing Unit J-1 and by transferring him to Level IV. In Count V, Plaintiff alleges that Defendant Berghuis violated the First Amendment by perpetuating the retaliation taken at LCF and allowing his transfer to Level II at LRF.

For relief, Plaintiff seeks injunctive relief and compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v.* Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations repecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965;

*Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eleventh Amendment

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Turnboe v.*

*Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### B. Retaliation

Plaintiff alleges three counts of retaliation – against LCF Defendants Hoffner and Hawkins; against RMI Defendants Palmer, Kipp, Stewart, Uwanaka and Bonn; and against LRF Defendant Berghuis. All of Petitioner's allegations of retaliation fail to state a claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, cannot show that his transfers from LCF to RMI and from RMI to LRF were adverse actions taken against him because he filed a grievance or grievances. As the Sixth Circuit explained in *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and

moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007).

Plaintiff's transfer was from one Level II facility to another Level II facility on both occasions of which he complains. By his own allegations and attachments, Plaintiff acknowledges that his custody status was never changed. He was classified as a Level II prisoner at LCF, RMI and LRF. When Defendants Hoffner and Hawkins authorized Plaintiff's transfer from LCF to RMI, they sent Plaintiff to a Level II facility. Plaintiff has no constitutional right to remain at a specific facility or to prevent a transfer to another Level II facility for a permissible reason. *Ward*, 58 F.3d at 274.

To the extent Plaintiff believes that LCF is a better Level II facility for his purposes than RMI or LRF, he fails to state a claim. Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in being placed in a particular prison or prison program. *See, e.g.*, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs"). For the same reasons, Plaintiff has no constitutional claim arising from his preference

for a particular facility's layout or comfort, and Plaintiff makes no factual allegations suggesting that he was unable to receive necessary medical care at any facility other than LCF. Therefore, the actions of LCF staff in transferring Plaintiff is insufficient to constitute an adverse action and Plaintiff fails to state a claim for retaliation.

Moreover, to the extent that Plaintiff complains that he was moved to a Level IV unit the day after his arrival at RMI, Plaintiff fails to allege sufficient facts to support a conclusion that the placement in a Level IV unit was retaliatory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Here, Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that the RMI Defendants even knew about his grievances filed at LCF, much less that they retaliated against him by placing him in a Level IV housing unit because he filed a grievance against some other, unnamed officers at LCF. Indeed, he

fails to allege any facts suggesting that the placement in the Level IV unit was for any reason other than that stated on the security classification review forms – that is, that RMI did not have a bed in the Level II unit that met Plaintiff's medical needs.  Similarly, Plaintiff fails to make any factual allegations that would support an inference of retaliation from his transfer from RMI to Level II at LRF.  His conclusion that the RMI Defendants transferred him to LRF because of grievances filed at LCF is even more attenuated than that they placed him in a Level IV unit for that reason.  Finally, his inference that LRF Warden Berghuis "perpetuated" the earlier retaliation by keeping him at LRF after he had been transferred in is wholly unsupported and unreasonable.

Accordingly, Plaintiff's allegations are insufficient to support both the second and third prongs of a retaliation claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Counts I, III, IV and V of the amended complaint and Defendants Michigan Department of Corrections, Bonita Hoffner, Carmen D. Palmer, Tim Kipp, Anthony Stewart, Tokie R. Uwanaka, Alan M. Bonn and Mary Berghuis will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve Count II of the complaint against Defendants Howes and Hawkins.

An Order consistent with this Opinion will be entered.


Dated:  May 13, 2009                               /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge