UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS TATE,

       Plaintiff,                                  Hon. Janet T. Neff

v.                                                     Case No. 1:09-CV-307

CAROL HOWES, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Howes' and Hawkins' Motion for Summary Judgment, (dkt. #22), and Plaintiff's Motion for Summary Judgment, (dkt. #43). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**, Defendants' motion be **granted**, and Plaintiff's remaining claims be **dismissed without prejudice**.

## BACKGROUND

Plaintiff Curtis Tate is presently incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Earnest C. Brooks Correctional Facility (LRF). The actions giving rise to this lawsuit occurred while Plaintiff was housed at LRF and also while he was housed at the Lakeland Correctional Facility (LCF) and the Michigan Reformatory (RMI). Plaintiff initiated this against the MDOC and following individuals: LCF Warden Carol Howes, LCF Deputy Warden Bonita Hoffner, LCF Assistant Deputy Warden Dan Hawkins, RMI Warden Carmen D. Palmer, RMI Deputy

Warden Tim Kipp, RMI Assistant Deputy Warden Anthony Stewart, RMI Resident Unit Manager Tokie R. Uwanaka, RMI Assistant Resident Unit Supervisor Alan M. Bonn and LRF Warden Mary Berghuis.

The following allegations are contained in Plaintiff's amended complaint. (Dkt. #6). On January 14, 2009, while he was incarcerated at LCF, Plaintiff underwent an operation at Borgess Medical Center to repair two brain aneurysms. Plaintiff was released from the hospital on January 26, 2009. However, Plaintiff's doctors planned to perform a second surgery 90 days later to repair another aneurysm. Following his surgery, Plaintiff experienced certain physical and mental effects requiring accommodations such as a barrier-free prison environment and rehabilitation services to improve his balance, ambulation, dexterity and vision and speech skills.

On January 26, 2009, Plaintiff was placed in the LCF Segregation Housing Unit, cell #2, where he was held through February 3, 2009. This cell was unheated and Plaintiff was not provided with sufficient clothing or blankets to stay warm. Plaintiff repeatedly advised Defendants Howes and Hoffner of the cold cell temperatures, but they failed to address the issue. As a result of this circumstance, Plaintiff experienced severe pain and suffering and his recovery from surgery was prolonged.

On February 3, 2009, Petitioner was found guilty of three misconducts: threatening behavior, creating a disturbance and sexual misconduct. The following day, Plaintiff was transferred from LRF to RMI. A security classification review was conducted at RMI by Defendant Uwanaka, which was approved by Defendant Stewart on February 5, 2009. Plaintiff retained a Level II security classification, but was placed in Level IV in order to facilitate his need for medical accommodations such as a ground floor room and a lower level bunk. On February 26, 2009, Defendant Bonn issued a corrected security classification review report, which also was approved by Defendant Stewart. That review again listed Plaintiff's true classification as Level II and his actual placement classification as

Level IV on the basis of a lack of bed space at Level II. On March 4, 2009, Plaintiff was transferred from RMI to Level II at LRF.

In Count I of his amended complaint, Plaintiff alleges that the MDOC subjected him to cruel and unusual punishment by transferring him from LCF to RMI, in disregard of his recent medical treatment and his anticipated need for additional surgery. Plaintiff alleges that, because LCF is closer to the medical center than RMI and because LCF is a barrier-free facility, the MDOC should have refused to transfer him for at least 180 days after his surgery. Plaintiff alleges that his transfer to RMI impeded his recovery.

Plaintiff alleges in his second claim for relief that Defendants Howes and Hawkins violated his rights under the Eighth Amendment by subjecting him to nine winter days of imprisonment in a cell lacking heat. In Count III, Plaintiff contends that Defendants Hoffner and Hawkins violated his First Amendment rights by transferring him from LCF to RMI in retaliation for Plaintiff having filed grievances about abusive prison conditions. In his fourth claim for relief, Plaintiff alleges that RMI Defendants Palmer, Kipp, Stewart, Uwanaka and Bonn violated his First Amendment rights by continuing his retaliatory transfer, by moving him from RMI A-Ward to RMI Housing Unit J-1 and by transferring him to Level IV. In Count V, Plaintiff alleges that Defendant Berghuis violated the First Amendment by perpetuating the retaliation taken at LCF and allowing his transfer to Level II at LRF. Plaintiff seeks injunctive and monetary relief.

On May 13, 2009, the Honorable Janet T. Neff dismissed all of Plaintiff's claims except for his Eighth Amendment claim against Defendants Howes and Hawkins that he was housed for nine days in a cell without sufficient heat. (Dkt. #8). Defendants Howes and Hawkins now move for

summary judgment as to this claim. As discussed below, the undersigned recommends that Defendants' motion be granted and Plaintiff's remaining claims be dismissed without prejudice.

## ANALYSIS

I. **Defendants' Motion for Summary Judgment**

Defendants assert that Plaintiff's remaining claim must be dismissed for failure to properly exhaust administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to

petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and

independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance

to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Furthermore, a prisoner is not permitted to complete the administrative grievance process after filing suit. Rather, the prisoner must fully exhaust his administrative remedies *before* initiating legal action. *See, e.g., Mack v. DeWitt*, 40 Fed. Appx. 36, 38 (6th Cir., Apr. 30, 2002); *Byrd v. Rush*, 68 Fed. Appx. 686, 687 (6th Cir., July 7, 2003); *Shove v. Ayers*, WL 1561941 at *1-4 (N.D. Cal., June 3, 2009).

Defendants have identified three grievances that Plaintiff submitted regarding his allegations that his cell lacked sufficient heat: (1) LCF 2009-01-0109-22G, (2) LCF 2009-02-0126-07Z, and (3) LCF 2001-02-0138-28A. While Plaintiff pursued each of these grievances through all three steps of the grievance process, he initiated the present action before the grievance process was completed (or the 120 day period for completing the grievance process had passed). Specifically, Plaintiff initiated the present action before he even appealed any of these grievances to Step II of the grievance process. In response to Defendants' motion, Plaintiff has not identified any additional grievances that he pursued concerning the allegations in question. Instead, Plaintiff acknowledges that he initiated the present lawsuit before completing the administrative grievance process.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment be **granted** and Plaintiff's remaining claims be dismissed without prejudice for failure to properly exhaust administrative remedies.

## II. Plaintiff's Motion for Summary Judgment

Plaintiff has submitted no evidence in support of his assertion that he is entitled to judgment as a matter of law. Furthermore, as discussed above, Plaintiff's remaining claim has not been properly exhausted. Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be **denied**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, (dkt. #43), be **denied**; Defendants Howes' and Hawkins' Motion for Summary Judgment, (dkt. #22), be **granted**; and Plaintiff's remaining claims be **dismissed without prejudice**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 4, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge